Filed 2/8/21  Gurvitz v. Mandelbaum CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
## SECOND APPELLATE DISTRICT
## DIVISION FOUR

| | |
|---|---|
| MEIR GURVITZ, | B305532 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 19STCV32349) |
| v. | ORDER MODIFYING OPINION |
| SHERYL MANDELBAUM, et al., | [NO CHANGE IN JUDGMENT] |
| Defendants and Respondents. | |

THE COURT:

It is ordered that the opinion filed herein on January 28, 2021, be modified as follows:

On the caption page replace "Lynn H. Scaduto, Judge" with "William F. Fahey, Judge.

_____

WILLHITE, Acting P.J.        COLLINS, J.        CURREY, J.

Filed 1/28/21  Gurvitz v. Mandelbaum CA2/4 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR


| | |
|---|---|
| MEIR GURVITZ,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>SHERYL MANDELBAUM, et al.,<br><br>Defendants and Respondents. | B305532<br><br>(Los Angeles County<br>Super. Ct. No. 19STCV32349) |


APPEAL from a judgment of the Superior Court of Los Angeles County, Lynn H. Scaduto, Judge.  Affirmed.

Holstrom, Block & Parke, Ronald B. Funk for Plaintiff and Appellant.

Fox Rothschild, John J. Shaeffer, Jocelyn Leinart for Defendants and Respondents.

## INTRODUCTION

Defendant Jennifer Mandelbaum was married to plaintiff Meir Gurvitz's son, Joseph Gurvitz.[1]  When Jennifer and Joseph divorced, Meir and a company he controlled, Freshbrook Ltd., were included in the divorce proceedings as party claimants, because Freshbrook had a lien on the couple's home, a marital asset.  Jennifer's mother, defendant Sheryl Mandelbaum, is an attorney and helped represent Jennifer in the divorce.  Jennifer, Joseph, Meir, and Freshbrook all reached a settlement agreement memorialized in a 2017 deal memorandum, which was entered as a stipulated judgment by the family law court in March 2018.

In March 2019, Joseph attempted to have the judgment set aside, claiming that he agreed to the settlement under duress as a result of Jennifer's threats to him and Meir.  That motion was denied.  Meir then sued Jennifer and Sheryl in the instant action, alleging that they forced the settlement through extortion and fraud.  Jennifer and Sheryl demurred on the basis that the issues had been fully litigated in the dissolution proceeding and Meir's claims constituted an impermissible collateral attack on that judgment.  The trial court sustained the demurrer without leave to amend.

On appeal, Meir asserts that his complaint included sufficient factual allegations to state causes of action for extortion and fraud.  He says nothing in his opening brief about the substantive basis of defendants' demurrer.  As such, Meir has

---

[1]Because several people involved in this case share last names, we refer to them by first names for clarity.  No disrespect is intended.

2

failed to demonstrate that the trial court's ruling was erroneous, and we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A.      Complaint**

In September 2019, Meir sued Jennifer and Sheryl; the first amended complaint (FAC), filed in December 2019, is the operative complaint for purposes of appeal.  Meir alleged two causes of action in the FAC:  extortion and fraud.  In the cause of action for extortion, Meir alleged that Jennifer was previously married to Meir's son, Joseph.  Sheryl is Jennifer's mother and an attorney.  Meir alleged that in February 2010, through Freshbrook, Ltd., "a foreign corporation that was formed to administer assets for Meir's benefit," he purchased a property on June Street in Los Angeles and had the title placed in Joseph's name.  "Freshbrook's loan," apparently to Joseph, "was memorialized by a promissory note . . . and was secured by a deed of trust on the June Street Property."  Meir later paid for renovations to the property, the property was rented briefly, then Joseph and Jennifer lived at the property beginning in 2013.

In August 2011 Joseph refinanced the property, paid off the 2010 loan, secured a new loan through East West Bank, and secured another new loan though Freshbrook.  Meir alleged that Freshbrook's deed of trust securing the loan was not properly recorded.  After Joseph failed to pay the loans, Freshbrook sued Joseph and obtained a judgment against Joseph in November 2015, which according to Meir was filed with the Los Angeles County Recorder and created "a lien on the June Street Property."

3

Meir alleged that Jennifer fraudulently induced Joseph to sign a grant deed in December 2014, which changed title to the June Street property from Joseph alone to Joseph and Jennifer. Jennifer then filed for divorce in March 2015. Sheryl "became co-counsel of record for Jennifer in the divorce proceedings, and in that capacity, acted as Jennifer's agent in committing the acts" alleged in the FAC.

Meir alleged that "[d]uring the course of the divorce proceedings, Freshbrook and Meir were both joined as alleged claimants against assets of the marital estate." Freshbrook also filed a separate action seeking cancellation of the December 2014 grant deed. Meir alleged that Sheryl and Jennifer "sought to obtain an unfair advantage in the divorce proceedings through the use of extortionate and unlawful threatening conduct and intimidation." The threats included telling Meir that if the divorce proceedings were not settled favorably to Jennifer, Meir could "face jail time for tax evasion and serious tax liabilities in Israel and other countries." Meir further alleged that Sheryl, while acting as Jennifer's attorney, threatened to "finish Meir off financially," interfere with his marriage, interfere with his daughter's marriage, and release derogatory information about Meir to the media and on the internet.

Meir alleged that while "under duress" from these threats, he and Freshbrook joined "a settlement in which Freshbrook would reconvey its deed of trust on the June Street Property" and vacate its judgment against Joseph. Meir alleged that he "would not have so acted but for the extortionate threats made by Sheryl on behalf of Jennifer." "Freshbrook has since been wound up, and its assets (including any claims for damages resulting from Defendants' extortionate conduct) have been distributed to Meir."

4

Meir alleged that "[a]s a direct and foreseeable result of Defendants' extortionate threats," he suffered damages to be proved at trial.

In the cause of action for fraud, Meir alleged that "Sheryl and Jennifer had caused false claims to be disseminated within the Orthodox Jewish community that Joseph refused to grant Jennifer a religious bill of divorcement, known as a *get*. Defendants posted these false claims on various internet sites." Then Sheryl, representing Jennifer in the divorce, "presented various demands on behalf of Jennifer," and "promised that if Meir acceded to Jennifer's demands, she would take the false claims [regarding Joseph] down from the sites on which she posted them." Sheryl also "promised that if Meir acceded to Jennifer's demands, Jennifer would allow Meir to see the three children of the marriage between Joseph and Jennifer." Meir alleged, "When Sheryl made the foregoing promises, neither Sheryl nor Jennifer had any intention of performing them. The promises were thus false at the time they were made." Although Meir complied with Sheryl's demands, the claims against Joseph have not been removed and Meir has not been allowed to see his grandchildren. Meir alleged that as a result, he suffered damages to be proved at trial. On both causes of action, Meir requested damages, punitive damages, and costs.

## B. Demurrer, opposition, and ruling

Defendants demurred to the FAC on three grounds: first, that the causes of action in the FAC were barred by res judicata or collateral estoppel; second, that the court lacked jurisdiction to hear the matter because Meir, Freshbrook, and their attorneys "have all agreed to a reservation of jurisdiction by Family Court Department 13 pursuant to a stipulated judgment" signed in

5

December 2017 and January 2018 "as joined parties to the divorce proceeding and as a Plaintiff in the two civil cases filed by Freshbrook Ltd."; and third, because "a collateral attack on a final judgment is impermissible as a matter of law."

In support of their demurrer, defendants explained that two civil cases filed by Freshbrook during Jennifer and Jonathan's divorce proceeding were found to be related to the divorce because they affected the characterization of the couple's assets; the superior court assigned the civil cases to the family law department. "[A]fter many months of settlement negotiations, all of the parties to these coordinated actions and their respective counsel," including Meir and his attorney, "ultimately stipulated to, and signed, a judgment and release of all claims," which was entered as a final judgment in March 2018.

Defendants filed a request for judicial notice, which included the 30-page dissolution judgment.[2] The terms of the

---

[2]The record on appeal does not indicate whether the trial court granted defendants' request for judicial notice, and defendants did not file a request for judicial notice with this court. A court may judicially notice the "record of . . . any court of this state" (Evid. Code, § 452, subd. (d)), and a "reviewing court may take judicial notice of any matter specified in Section 452." (Evid. Code, § 459, subd. (a).) On our own motion, we take judicial notice of the documents submitted with defendants' request for judicial notice below, noting that we "may take judicial notice of the *existence* of judicial opinions and court documents, along with the truth of the results reached—in the documents such as orders, statements of decision, and judgments—but cannot take judicial notice of the truth of hearsay statements in decisions or court files, including

6

judgment were based on a deal memorandum that Joseph, Jennifer, Meir, and Freshbrook signed in September 2017. The judgment stated that Jennifer and Joseph were the parties, and Freshbrook and Meir were "party claimants." The judgement stated that Jennifer was awarded the June Street property subject to the East West Bank mortgage and an equalizing payment due upon the sale of the residence. The court found that Joseph had already executed an interspousal transfer deed. The court found that prior to the judgment, Joseph "and the Party Claimants, as applicable, have removed all encumbrances on the title to the June Street Residence," as required by the deal memorandum.

The judgment also stated, "[T]he Court finds that the Parties and Party Claimants mutually release and forever discharge each other from any and all actions, liabilities, claims, demands, and obligations of any kind or character, both in law and in equity, that any of them ever had, now has, or may have against one another. . ." and that this release would "apply to any and all actions, liabilities, claims, demands, and obligations, whether known or unknown, foreseen or unforeseen, patent or latent, or mature or unmatured, that the Parties and/or Party Claimants may have against each other." The judgment stated that the court "retains jurisdiction . . . to make orders and determinations that are necessary and/or appropriate (i) to enforce any of the terms of this Judgment or otherwise effectuate the division of property as specified in the Judgment; (ii) . . . to resolve any dispute that may arise concerning the terms of the Judgment." The judgment continued, "The Court finds that each

pleadings, affidavits, testimony, or statements of fact." (*Williams v. Wraxall* (1995) 33 Cal.App.4th 120, 130 fn. 7.)

7

Party and Party Claimant . . . enters into this Judgment voluntarily, free from fraud, undue influence, coercion, or duress of any kind." The judgment was signed by Joseph, Jennifer, Meir, and Freshbrook, and was signed by the court on March 23, 2018.

A year later, in March 2019, Joseph filed a request to set aside the September 2017 deal memorandum and the March 2018 stipulated judgment on the grounds of duress. Joseph asserted that there was "extreme duress and coercion exerted on [him] at the time the settlement was reached." In a declaration, Joseph stated that he was assaulted by a man at a restaurant who accused Joseph of refusing to give Jennifer a get. Joseph also said that his attorney told him that Jennifer and Sheryl were threatening Meir. Joseph said that in light of the threats, "I had to agree to settlement terms as they were being dictated to me by Jennifer." He stated, "I believed that I had no choice but to agree to Jennifer's demands to settle on her terms that was [*sic*] entirely inequitable to protect my father's health." Joseph asserted that the settlement terms were "manifestly unjust." Joseph stated that he lost his visa and could not travel to the United States after July 3, 2017, but he had obtained a new visa and "[n]ow that I am finally able to travel to the U.S.," he was "seeking court intervention to set aside portions of, or in the alternative the entirety of the Judgment that was entered against me under duress."

Meir submitted a declaration in support of Joseph's request. The declaration included descriptions of many of the same threats by Sheryl to Meir that were alleged in the FAC in this case. Meir stated that he communicated these threats to Joseph. Notably, Meir did not state that he felt compelled to

8

settle his own claims or those of Freshbrook as a result of these threats.

The family court denied Joseph's request on May 30, 2019. In a five-page written order, the court found that no evidentiary hearing was required "because the material facts are not in controversy," and the court "denies [Joseph's] request for order in its entirety." The court noted that more than six months passed between the deal memorandum and the judgment, and in the interim the court held a hearing and heard testimony by both parties. The court invited the parties to tell the court if there was any reason the judgment should not be entered, and no one raised any objections. The court noted, "[T]here is a nearly ubiquitous dynamic in family law cases of parties feeling pressure to settle to avoid, among other things, uncertainty and the financial, emotional and reputational toll that proceeding through discovery and trial can have on the parties and those they love. The Court of Appeal has made clear that 'buyer's remorse' about compromises made because of that type of pressure does not, without more, establish duress." The court found that the terms of the settlement were not inequitable, addressed some of Joseph's additional arguments, and stated, "[T]he court concludes that the record before it cannot support a reasonable conclusion that [Joseph] had no alternative but to succumb to [Jennifer's] demands."

Defendants asserted in their demurrer, "Meir is only initiating a new lawsuit to attack the Stipulated Judgment because Department 13 has already decided these same issues *against* the Gurvitzes and held the Stipulated Judgment is valid. [¶] The Court has already decided [Meir's] claims. This Court should not allow this charade to continue." Defendants asserted

9

that Meir's claims were barred by res judicata "because the allegations levied in his Complaint are among the claims that [Meir] settled and/or released in the Stipulated Judgment," and because Joseph unsuccessfully attempted to have the judgment overturned on the very same basis. Defendants also asserted that Meir's claims constituted an impermissible collateral attack on the March 2018 judgment.

In his opposition, Meir contended, "Simply put, Defendants' entire argument fails because there has not been a 'final judgment' on the merits of [Meir's] claims of extortion and fraud. The March 23, 2018 judgment . . . issued in the family law matter . . . did not adjudicate the extortion or fraud claims." Meir also stated that Joseph had appealed the family court's order on his request to set aside the judgment, and therefore "the ruling on Joseph's motion to set aside the Judgment is not a final adjudication of the extortion issues in any sense." Meir further asserted that the family court's reservation of jurisdiction in the judgment "is not a ground for demurrer." Meir asked that if the court were inclined to sustain the demurrer, that it instead defer the issue until after Joseph's appeal was decided. Meir did not request leave to amend his complaint.

In their reply, defendants asserted that the lawsuit was engineered to harass them and force them to incur legal fees, and Meir's "attempt to spawn even more litigation is a gross misuse of judicial resources." Defendants noted that the judgment itself had never been appealed; Joseph was appealing only the ruling on his request to set aside the judgment. They asserted, "The law cannot allow parties to unilaterally undermine the finality and effect of a judgment by merely filing a motion to set aside the judgment long after the time for appeal has expired."

10

The record on appeal does not include a reporter's transcript of the hearing on the demurrer. The court's minute order dated February 6, 2020, stated that the demurrer "is Sustained without Leave to Amend. [¶] Court orders the entire case dismissed With Prejudice." The court did not provide any explanation of its reasoning in sustaining the demurrer. Meir timely appealed.

## DISCUSSION

Meir asserts two contentions on appeal: first, that he alleged sufficient facts to demonstrate each element of his two causes of action, and second, that the trial court erred by not granting him leave to further amend the complaint. Notably, Meir has *not* addressed the contentions raised in defendants' demurrer—that his claims were barred by res judicata, that the trial court lacked jurisdiction, and that this action constituted an impermissible collateral attack on the March 2018 judgment. Meir's failure to address the substance of the defendants' demurrer, which presumably informed the superior court's ruling, constitutes a failure to demonstrate error. We therefore affirm.

"[W]e apply the de novo standard of review in an appeal following the sustaining of a demurrer without leave to amend." (*California Logistics, Inc. v. State of California* (2008) 161 Cal.App.4th 242, 247.) "[W]e accept the truth of material facts properly pleaded in the operative complaint, but not contentions, deductions, or conclusions of fact or law. We may also consider matters subject to judicial notice." (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924.) "The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken.'" (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962,

11

966-967.)  Even under the de novo standard of review, the appellant bears the burden of demonstrating error.  (*Denny v. Arntz* (2020) 55 Cal.App.5th 914, 920.)

In his opening brief on appeal, Meir points out that the Supreme Court has described extortion as "the threat to accuse the victim of a crime or 'expose, or impute to him . . . any deformity, disgrace or crime' (Pen. Code, § 519) accompanied by a demand for payment to prevent the accusation, exposure, or imputation from being made."  (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 332 fn. 16.)  Meir asserts that "[a]ll of these elements are pled and supported by factual allegations" in the FAC, and "[b]ecause there are sufficient factual allegations in the First Amended Complaint to support a cause of action for Extortion, it was error for the trial court to sustain the demurrer. . . ."  As for his fraud cause of action, Meir contends that the allegations in the FAC "match the requirements of a cause of action for Fraud (False Promise)," so the demurrer should have been overruled. Finally, Meir asserts that "even if the demurrer was properly sustained, it was an abuse of discretion for the trial court to have failed to grant leave to amend the complaint."

Defendants point out that although Meir acknowledges that the trial court "dismissed his complaint based on the doctrine of res judicata and as an impermissible collateral attack on [the] judgment, his opening brief is silent on the appropriateness of a dismissal on such grounds."  Defendants also assert that without any record indicating the basis for the trial court's ruling, Meir cannot demonstrate error.  Indeed, there are "three fundamental principles of appellate review:  (1) a judgment is presumed correct; (2) all intendments and presumptions are indulged in favor of correctness; and (3) the

12

appellant bears the burden of providing an adequate record affirmatively proving error." (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58.) We review a court's ruling rather than its reasoning, but "[i]n order to prevail on appeal from an order sustaining a demurrer," an appellant is required to "overcome all legal grounds on which the trial court sustained the demurrer." (*Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 752.)

Meir's opening brief does not even attempt to address the substance of defendants' demurrer. Defendants did not demur on the grounds that Meir's factual allegations were insufficient to demonstrate each element of his two causes of action.[3] Rather, defendants asserted that the causes of action in the FAC were barred because his contentions regarding his alleged damages had been fully adjudicated by the March 2018 judgment. A demurrer is appropriate where the "ground for objection" appears in "any matter of which the court is required to or may take judicial notice." (Code Civ. Proc., § 430.30, subd. (a).) Presumably,

---

[3]At oral argument, Meir's counsel argued that plaintiffs *did* challenge the factual sufficiency of the allegations, because they sought a demurrer under Code of Civil Procedure, section 430.10, subdivision (e), which allows for a demurrer when "[t]he pleading does not state facts sufficient to constitute a cause of action." However, this subdivision provides the basis for any "general demurrer," and has been interpreted to allow defendants to raise certain affirmative defenses such as the statute of limitations, laches, res judicata, and privilege. (See 5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, §§ 952, 961-967.) "If all of the facts necessary to show that an action is barred by res judicata are within the complaint or subject to judicial notice, a trial court may properly sustain a general demurrer." (*Frommhagen v. Board of Supervisors* (1987) 197 Cal.App.3d 1292, 1299.)

13

the superior court sustained the demurrer on at least one of the grounds defendants asserted in the demurrer. Meir argues that the facts alleged on the face of the complaint were sufficient to state a cause of action. However, because he has failed to address the substance of defendants' demurrer, the documents relating to the underlying action, or the court's ruling, Meir has not demonstrated error.

Meir argues for the first time in his reply brief that his claims are not barred by res judicata, because a "waiver of claims in a contract does not preclude a cause of action for fraud in the inducement of that contract." He also asserts in his reply brief that his claims do not constitute an improper collateral attack on the judgment, because a collateral attack may be allowed in cases of extrinsic fraud. However, de novo review of an order sustaining a demurrer "'is limited to issues which have been adequately raised and supported in [appellants' opening] brief.'" (*WA Southwest 2, LLC v. First American Title Ins. Co.* (2015) 240 Cal.App.4th 148, 155.) "[A]n appellant's failure to discuss an issue in [the] opening brief forfeits the issue on appeal." (*Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 125.) Meir's contentions have been forfeited.

Meir also asserts that the trial court abused its discretion when it failed to allow him leave to amend his complaint. "[I]t is an abuse of the trial court's discretion to sustain a demurrer without leave to amend if there is a reasonable possibility the plaintiff can amend the complaint to allege any cause of action." (*Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 711.) "To prove such abuse of discretion, however, the plaintiff must demonstrate how the complaint can be amended. While such a showing can be made for the first time

14

to the reviewing court [citation], it must be made." (*Ibid*.)  Meir has not done so here.  Instead, he asserts only that this court must "presume that Meir can and will, at trial, prove the facts alleged in his First Amended Complaint."  Because Meir has not demonstrated how the complaint could be amended to address the issues raised in the demurrer, he has not shown that the trial court abused its discretion in denying leave to amend.

## DISPOSITION

The judgment is affirmed.  Defendants are entitled to recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.


We concur:


WILLHITE, ACTING P.J.


CURREY, J.